# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| DARRIN HILL, ET AL., | ) ) ) **CIVIL ACTION** |
| Plaintiffs, | ) ) **NO. 13-2463** |
| v. | ) ) **SECTION: "B"** |
| CITY OF NEW ORLEANS, ET AL., | ) ) **MAGISTRATE: "3"** |
| Defendants. | ) ) ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AND TO STRIKE DEFENDANT CATHEY CARTER'S MOTION FOR RECONSIDERATION

Pursuant to Federal Rule of Civil Procedure 16(f), Plaintiffs Darrin and Marie Hill respectfully ask this Court to sanction Defendants' egregious violation of this Court's scheduling orders by precluding Defendants from relying on the late-proffered evidence from John Dildy— either in their motion for reconsideration of this Court's summary judgment decision or at trial. After years of denying that the City of New Orleans had records of Mr. Hill's criminal adjudication, and after losing on summary judgment and before the Fifth Circuit on the facts properly before those courts, Defendant puts forth "newly discovered" evidence—which should and could have been disclosed earlier—in a bad-faith attempt to flout this Court's deadlines and further delay trial. Defendants' untimely attempt to move for summary judgment a second time, based on evidence that should have been disclosed within the discovery period, should be rebuffed.

## I.      Facts and procedural history

Darrin Hill filed the Complaint in this case, which alleged, *inter alia*, that Defendants deprived him of his due process rights, causing him to be wrongly found to have committed a

rape and locked up for nearly 20 years, on **April 25, 2013**. Now, over three years later—well after the main fact discovery deadline of **November 18, 2014**, after this Court's denial of summary judgment to Defendants, and even after the Fifth Circuit's dismissal of Defendants' appeal—Defendants ask this Court to consider new evidence on a matter that Defendants did not even dispute in their summary judgment papers: whether Darrin Hill was adjudicated not guilty by reason of insanity pursuant to trial-like procedures. Defendants do not attempt to show good cause for the delay in putting forth this evidence, or to show that they were reasonably diligent in pursuing it during the discovery period, as they simply cannot make either showing.

Instead, having repeatedly failed to prevail on their qualified immunity arguments, Defendants[1] have attempted to switch strategies as trial approaches without regard to the Civil Rules or the deadlines set by this Court's Scheduling Orders. Defendants ask this Court to re-decide summary judgment based on two pieces of untimely disclosed evidence (the "Dildy evidence"), both of which purportedly support Defendants' argument that Darrin Hill never had a formal trial—but neither of which are dispositive of this issue or would warrant granting summary judgment to Defendants. The evidence consists of (1) a "Judge Trial Report" apparently kept in Mr. Dildy's personal files but missing from the Orleans Parish District Attorney's files, (Dkt. No. 135-4), and (2) a Declaration from Mr. Dildy describing his purported memories of the process by which Mr. Hill was adjudicated not guilty by reason of insanity on February 11, 1999, (Dkt. No. 135-3).

---

[1] Though the "motion for reconsideration" to which Dildy evidence was appended was nominally filed on behalf of Defendant Cathey Carter, defense counsel in this case represents all Defendants and has put forth a unified defense. For this reason, and because the motion does not argue that the Dildy evidence would *only* be relevant to Carter's defense, Plaintiffs will refer to the movant as "Defendants" in this memorandum and ask the Court to sanction all Defendants by excluding this evidence as to all of them.

**A. This Court's Scheduling Orders and management of discovery**

In its June 24, 2014 Scheduling Order, this Court ordered that by **November 18, 2014** "all discovery shall be completed" and that "[t]he parties shall file in the record and serve upon their opponents a list of all witnesses who may or will be called to testify at trial, and all exhibits that may or will be used at trial." (Dkt. No. 51). This Court specifically noted that it would "not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Minute Entry . . . without an order to do so issued on motion for good cause shown." (*Id.*).[2] Defendants have not made such a motion, nor can they show good cause. Indeed, the "new" evidence put forth by Defendants is not new at all; it is very old evidence that was apparently not difficult for Defendants to uncover once they began to look in earnest.

Discovery in this case required special diligence. Because of the passage of time and the inadvertent destruction or loss of much of the documentary evidence that could have shed light on the misconduct in this case, Darrin Hill's criminal proceedings, and the other relevant events of the 1990s—and because of Mr. Hill's relatively limited ability, due to his intellectual disabilities and mental illness, to assist in this litigation—Plaintiffs expended considerable effort in locating witnesses and attempting to locate files. Indeed, Plaintiffs made efforts to obtain every shred of evidence regarding Mr. Hill's prosecution and the associated proceedings. Among other efforts, Plaintiffs obtained the full Orleans Parish District Court file, sought transcripts and/or tapes of the suppression hearing directly from the court reporter, attempted to obtain the

---

[2] After multiple motions for continuances due in large part to the medical issues of a key witness, this Court extended discovery on a narrow issue by fewer than two months and delayed trial by one month. (*See* Dkt. No. 108). The principal discovery deadline and dispositive motions deadline remained intact.

defense attorneys' files,[3] obtained the full Orleans Parish District Attorney's file, and conducted two Rule 30(b)(6) depositions in an effort to locate additional documents. At every turn, Plaintiffs were stymied by lost and destroyed files, and Defendants complicated the process by making untimely document disclosures and opposing legitimate continuance requests.

By way of example, Plaintiffs' claims have always focused, in substantial part, on the suggestion and misconduct that took place at the photo identification procedure where E.V. incorrectly identified Mr. Hill as her rapist. And beginning early in discovery, Plaintiffs made repeated efforts to recreate the photo lineup. In February 2014, Plaintiffs sent a discovery request to Defendants listing the Bureau of Investigation number for each of the six individuals in the lineup and requested any relevant names, information, or photographs. On September 3, 2014, after being told for months that Defendants no information on these individuals, Defendants belatedly disclosed a documentary production that revealed, for the first time, that two of the five fillers were white, not African American like Mr. Hill, and that one was substantially older than the rest.

Based in part on the late timing of these startling revelations, Plaintiffs' counsel requested an extension of discovery and trial dates. (*See* Dkt. No. 63-2 at 2 ("Plaintiffs are now left with about two months of discovery to explore this new information, with all of the critical Defendants already having been deposed."); *see also* Dkt. No. 59-1 (motion)). Defendants opposed the motion in relevant part, (*see* Dkt. No. 62), and the Court denied Plaintiffs' request, determining that "there has been sufficient time to complete factual discovery." (*See* Dkt. No. 64

---

[3] Mr. Hill's primary defense attorney at the 1999 hearing, Ms. Iona Renfroe, has passed away, and efforts to contact another of his attorneys from that period—for whom Plaintiffs only have a partial name—have not yet been successful. Plaintiffs' counsel also arranged for Mr. Hill's numerous other defense attorneys, including private attorneys and the Orleans Public Defenders, to conduct a comprehensive search of their files. None of these attorneys had retained any relevant documents.

at 1). Now, without making a showing of diligence or good cause, Defendants have completely disregarded the same scheduling order that they asked this Court to enforce against Plaintiffs.

**B. Lengthy litigation of these issues at summary judgment and before the Fifth Circuit**

Although Count I of Plaintiffs' Complaint alleged that Defendants had deprived Darrin Hill of due process and violated his right to a fair trial, Defendants made a strategic decision in their motion for summary judgment, filed on **November 21, 2014**, to portray Darrin Hill's claims as a false arrest case and to argue that probable cause was a defense to *all* of Plaintiffs' claims. (*See* Dkt. No. 105-1 at 1). Defendants also argued, without any reasonable basis—and despite the DNA exoneration and the conviction of the true rapist—that Mr. Hill was factually guilty of the crimes. In support of this argument, Defendants agreed that, in 1999, the judge reviewed evidence and found Mr. Hill had committed the crime. Indeed, in the Statement of Uncontested Material Facts filed with Defendants' summary judgment motion, Defendants stated: "On February 11, 1999, *based on the evidence presented regarding* both *guilt* and mental insanity, *the judge found* Mr. Hill not guilty by reason of insanity." (Dkt. No. 105-2 at 8 ¶ 77 (emphasis added)).

Plaintiffs successfully opposed Defendants' motion for summary judgment. Plaintiffs' Opposition reiterated—as was clear from Count I of the Complaint—that Mr. Hill's primary claim arose under the Fourteenth Amendment and had nothing to do with probable cause. Though Defendants' Reply brief insisted without explanation that Darrin Hill's sole true claim was the one listed as Count IV in his Complaint, (*see* Dkt. No. 114-2 at 5), Defendants also argued that Plaintiffs had no evidence to support their fair trial claim—specifically, that there was no evidence that E.V.'s lineup procedure was suggestive or that exculpatory evidence had been suppressed, (*see id.* at 5–6). At no point before the trial date, which was then set for

February 8, 2015, did Defendants seek or disclose other evidence to oppose Darrin Hill's fair trial claim. Defendants simply took the approach of insisting that Plaintiffs had not put forth sufficient evidence to create a genuine dispute of material fact. This Court rightfully disagreed with Defendants and denied their motion.

That Order was issued approximately a month before the scheduled trial date. However, without moving for this Court to reconsider its summary judgment ruling or attempting in any way to conduct additional investigation or discover additional evidence regarding Darrin Hill's fair trial claim, Defendants delayed the impending trial by filing a largely procedurally improper interlocutory appeal with the Fifth Circuit Court of Appeals. Defendants-Appellants argued that there were no genuine disputes regarding any fact material to Darrin Hill's fair trial claim—for example, that E.V.'s lineup procedure was suggestive, or that Carter suppressed exculpatory evidence. In a per curiam decision, that court explained that "the defendants' principal argument on appeal is that the district court erred in its factual determinations," and that it "do[es] not have jurisdiction on an interlocutory appeal from a denial of summary judgment to determine 'whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.'" *Hill v. New Orleans City*, No. 15-30062, 2016 WL 1055736, at *3–4 (5th Cir. Mar. 15, 2016) (citation omitted). Thus the Fifth Circuit affirmed the key holding of this Court, noting that it "adequately set forth the factual disputes that precluded summary judgment for Det. Carter," and that "[t]here is no question that those disputes are material." *Id.* at *5. But it also explained that the appeal itself was improper and dismissed the appeal as to Carter for lack of jurisdiction because the arguments she made were not actually legitimate grounds for an interlocutory appeal. *See id.*[4]

---

[4] As this Court is aware, the Fifth Circuit remanded the case with respect to the other individual defendants—for whom Defendants never made individualized arguments—so that this Court may determine with reasons whether they are entitled to summary judgment based on qualified

Troublingly, Defendants exhibited bad-faith behavior in litigating these issues before this Court and the Fifth Circuit. Most notably, though there was no basis for them to do so, Defendants persisted in arguing that Mr. Hill actually raped E.V. and robbed G.T. This Court rightfully recognized that "there remains no doubt as to the fact that Darrin Hill is ***not*** guilty of the rape of E.V. and that he was ***not*** in the car with her at the time of that incident" and characterized "Defendants' repeated attempts to blur this issue" as "misleading and troubling." (Dkt. No. 117 at 14). But even after the strong reproach from this Court, Defendants *again* argued to the Fifth Circuit that Darrin Hill was guilty as Mr. Woodberry's accomplice. Again, that court saw that "[t]here appears to be no evidence that Darrin Hill was the accomplice." *Hill*, 2016 WL 1055736, at *1 n.2; *see also id.* at *1 ("DNA evidence conclusively proved [Darrin Hill's] innocence.").

### C. With no justification, Defendants make late disclosures of the Dildy evidence

This Court denied Defendants' motion for summary judgment on January 14, 2015, but Defendants' counsel did not file their Fifth Circuit appellate brief until May 27, 2015. During that fourth month period, counsel apparently began an investigation into the assistant district attorneys involved in Mr. Hill's criminal case. On May 21, 2015, with no explanation, counsel for Defendants produced a one-page "Judge Trial Report." (*See* Ex. A at 2).

The Report largely confirmed the account of the adjudication put forth in the Uncontested Facts presented to the Court at summary judgment: The "trial report" specifically notes "Length of Trial: 1 day" and that Mr. Hill was adjudicated Not Guilty By Reason of Insanity. And the Trial Report was consistent with the documentary evidence Plaintiffs had put forth at summary judgment: the docket showing that "on 2/11/99 Defendant was found not guilty by reason of

---

immunity. *Hill*, 2016 WL 1055736, at *6. Of course, this omission from Defendants' initial briefing before this Court and the decision to pursue the appeal caused significant delay.

insanity" after having "entered a plea of not guilty." (Ex. B at 2). However, the *late disclosure* of the Report, just days before Defendants' appellate deadline, was a cause for concern. In subsequent email correspondence, Defendants' counsel provided little additional substantive information, but admitted that counsel's efforts "only began last week" and that "[w]ithin a week, we were able to identify Mr. Dildy and obtain the trial report." (Ex. A. at 6).

The filing of Defendants' recent Motion for Reconsideration with the appended Dildy Declaration—both of which Defendants' counsel actively concealed during the numerous conversations between counsel last month regarding the supplemental briefing schedule, (*see infra* at pp. 14–15)—was Plaintiffs' first indication that Mr. Dildy had any independent recollection of Mr. Hill's adjudication, or that Defendants may intend to call him as a witness at trial. John Dildy's name did not appear on Defendants' Rule 26(a) disclosures. Indeed, the name "John Dildy" was never mentioned in a single document disclosed to Plaintiffs during discovery—despite the fact that Plaintiffs requested and received what Defendants represent as the full District Attorney's file regarding Darrin Hill. Nor did Defendants' Witness and Exhibit List, filed on November 18, 2014, name John Dildy or otherwise put Plaintiffs on notice that he might have information relevant to Plaintiffs' claims. And Defendants have never sought leave to update their Witness List to include Mr. Dildy, nor have they sought leave to supplement their response to Plaintiffs' interrogatory asking Defendants to identify their witnesses and provide contact information.

### D. After years of delay and bad-faith tactics, Defendants request extraordinary relief

Now, after having repeatedly failed to stop Plaintiffs' case from proceeding to trial, and after what has already been a costly and lengthy litigation, Defendants essentially seek a re-do. Defendants ask this Court to decide summary judgment for a second time, and to be allowed to

present evidence that has "suddenly materialized" after years of litigation and well after the summary judgment deadline—some of which has never before been disclosed to Plaintiffs or the Court. In so doing, Defendants ask this Court to ignore that well over 100 pages of summary judgment briefing has already been submitted to this Court; that this Court already considered Defendants' arguments and issued a thorough, well-reasoned 52-page Order denying Defendants summary judgment; *and* that the Fifth Circuit heard the same arguments Defendants is now making—and nearly 150 pages' worth of additional arguments—and rejected them. Defendants request this extraordinary indulgence, even though there is simply *no* indication that they diligently sought this evidence during the proper discovery period. This Court should sanction Defendants' delay tactics and disregard for the orders of this Court by excluding this evidence.

## II.      Legal standard for sanctioning a party by precluding evidence

"Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. Consistent with the authority vested in the trial court by rule 16 . . . [a] trial court [has] 'broad discretion to preserve the integrity and purpose of the pretrial order.'" *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (citing *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)). Rule 16(f) explicitly authorizes district courts to sanction a party's failure to comply with a scheduling order by excluding evidence. The *Geiserman* court developed a four-part test to guide a district court's discretion in deciding whether evidence should be excluded, directing courts to consider:

> (1) the explanation for the failure to identify the witness;
> (2) the importance of the testimony;
> (3) potential prejudice in allowing the testimony; and
> (4) the availability of a continuance to cure such prejudice.

*Id.* at 791; *see also id.* at 793 (applying the same standard in determining whether evidence should be excluded from consideration at summary judgment).

Though the *Geiserman* test was originally created in the context of whether late-disclosed expert reports should be excluded from trial, it is widely employed in this Circuit to determine whether exclusion of evidence is the proper sanction for a party's violation of a district court's scheduling order. "The Fifth Circuit has since used this test to determine whether good cause exists for . . . a failure to produce discovery to the opposing party in accordance with a court-imposed deadline[.]" *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2014 WL 1154334, at *3 (E.D. La. Mar. 21, 2014) (citing *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 390 (5th Cir. 2009) (excluding evidence from trial that was not properly disclosed to the opposing party, in violation of a court order)). And "[t]he Fifth Circuit has suggested that the *Geiserman* test is also the appropriate method of analysis where . . . a party seeks to re-open discovery after the deadline has passed." *Id.* (citing *Colonial Freight Sys., Inc. v. Adams & Reese, LLP*, 524 F. App'x 142, 145 (5th Cir. 2013) (per curiam) (affirming the district court's decision not to reopen discovery so that a party may produce additional evidence of damages)); *see also Leonard v. Electro-Coal Transfer, LLC*, No. Civ. A. 01-1354, 2002 WL 34371500, at *2 (E.D. La. Apr. 10, 2002) (applying the *Geiserman* test in determining whether to admit evidence that was not timely designated).

## III.    Argument

Defendants have violated this Court's scheduling orders in two ways: (1) by, without showing good cause or reasonable diligence, putting forth evidence and a new witness that were never disclosed during the discovery period and were not listed on their Witness and Exhibit List; and (2) by filing, over a year and a half after this Court's deadline for dispositive pre-trial motions, what is styled as a motion for reconsideration but is in fact a *second* motion for summary judgment. This Court should exercise its authority under Rule 16(f) to sanction

Defendants by excluding this late-disclosed evidence from trial and from consideration at the summary judgment stage. For this reason, and because it is dramatically untimely, the Court should also strike Defendant Cathey Carter's motion for reconsideration.

Defendants are correct that Plaintiffs bear the ultimate burden at trial of showing that Darrin Hill was entitled to due process protections at the time of his adjudication not guilty by reason of insanity—and Plaintiffs intend to do so. But Defendants' bad faith, dilatory behavior should not be allowed to prejudice Plaintiffs by causing them to *again* litigate an issue that they have already litigated before this Court and before the Fifth Circuit. Defendants had ample opportunity to seek this evidence earlier, and their unjustified failure to do so should not give them a second bite at the apple at the summary judgment stage. Sanctioning Defendants in this case would prevent them from benefitting from their bad faith tactics and would "deter future dilatory behavior[ and] serve to enforce local rules or court imposed scheduling orders." *Geiserman*, 893 F.2d at 792.

**A. As Defendants violated this Court's scheduling order by failing to disclose this witness and evidence until after discovery had closed, exclusion at the summary judgment stage and at trial is an appropriate sanction.**

The *Geiserman* factors, applied to Defendants' inexcusable behavior in this case, weigh in favor of excluding the evidence from consideration at the summary judgment stage, and from being admitted at trial.

**i.** ***Defendants' explanations for their failure to adhere to this Court's deadlines are inadequate***

By way of explanation, Defendants offer two excuses for why they apparently did not begin looking for evidence regarding Darrin Hill's adjudication until months after the close of discovery, and after filing a procedurally improper appeal with the Fifth Circuit; both excuses are baldly pretextual, and neither even attempts to address the *length* of Defendants' delay.

Disappointingly, even at this late stage of litigation, Defendants engaged in bad faith behavior to conceal the Dildy Declaration during negotiations with Plaintiffs regarding the new summary judgment briefing schedule.

Defendants' first excuse is an argument that they have made once before to this Court (in their summary judgment reply brief) and to the Fifth Circuit: that "Plaintiffs' Opposition brief was . . . surprising" because Plaintiffs argued that police misconduct had deprived Darrin Hill of his Fourteenth Amendment rights to a fair trial and caused him to be locked up for nearly 20 years for a crime he didn't commit. (*See* Mot. for Reconsideration, Dkt. No. 135-1 at 7). As Plaintiffs have repeatedly noted, this Fourteenth Amendment claim is not only the heart of Darrin Hill's wrongful conviction suit—it is *Count I* of the Complaint.

A defendant cannot be heard to complain that it was surprised that a plaintiff actually intended to pursue to the claim listed in Count I of the Complaint. Where, as here, a party has had ample opportunity to discover the evidence earlier and has received no new information that put it on notice of the need to put forth that evidence, "[t]he first *Geiserman* factor . . . weighs against modification of the scheduling order." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2014 WL 1154334, at *4 (E.D. La. Mar. 21, 2014). For example, in *St. John v. Regis Corporation*, where the plaintiff alleged that the defendant's employees had caused him to develop a staph infection but did not timely designate an expert to opine on the standard of care, the court quickly rebuffed as not credible the plaintiff's argument that he "suddenly discovered" that the standard of care was at issue; the plaintiff had alleged a violation of the standard of care from the beginning of the case. No. CIV A H-06-2339, 2007 WL 1238413, at *2 (S.D. Tex. Apr. 25, 2007) (excluding plaintiff's late-designated expert).

Even if Plaintiffs' Opposition, which was filed on **December 1, 2014**, *had* surprised Defendants, and even if this could constitute good cause for the initial delay, Defendants have provided *no explanation* for their failure to investigate during the discovery period or to put forth the Dildy Declaration until nearly **1½ years** after that Opposition was filed. The Fifth Circuit has explained that, even where the prejudice to the opposing party would be slight if a late-designated expert were permitted to testify, and even though this prejudice could be largely cured by a continuance, exclusion of the testimony was still "particularly appropriate . . . where the defendants have failed to provide an adequate explanation" for their untimely designation. *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1289 (5th Cir. 1991). This is particularly true where Defendants had "reasonable access" to the late-disclosed evidence. *Paz*, 555 F.3d at 390–91. Here, Defendants clearly had access to Mr. Dildy, a former *New Orleans* Assistant District Attorney; as Defendants themselves made plain, this evidence was not difficult for *them* to uncover once their investigation began. (*See* Ex. A at 6).

Defendants' second excuse for the delay, that it was *Plaintiffs'* obligation to put forth this evidence, deserves very little consideration by this Court, as Defendants explicitly conceded that "based on the evidence presented regarding both guilt and mental insanity, the judge found Mr. Hill not guilty by reason of insanity" in their Statement of Uncontested Material Facts filed alongside its summary judgment motion. (Dkt. No. 105-2 at 8 ¶ 77). Plaintiffs thus had no obligation to put forth evidence on this uncontested fact; indeed, it would have been odd and a waste of resources to do so. At this stage of the proceedings, Defendants are bound by the admissions they have made. *See* E.D. La. Local R. 56.2 ("All material facts in the moving party's statement will be deemed admitted, for purposes of the [summary judgment] motion, unless controverted in the opponent's statement."). And although Defendants muse that Plaintiffs did

not even attempt to conduct discovery on this issue, this is simply false. Plaintiffs are aware of their burden on their due process claims and intend to carry it at trial.

Even if Defendants' incredible explanations were true, they cannot constitute good cause such that the Court's scheduling order should be disregarded. *See Gray v. Indus. Plant Maint.*, No. Civ. A. 01-1167, 2004 WL 1661209, at *3 (E.D. La. July 23, 2004) (good cause does not exist when a party "has not been diligent about complying with the Court's scheduling order"); *see also Borden v. United States*, 537 F. App'x 570, 574 (5th Cir. 2013) (per curiam) (declining to find that a district court abused its discretion in excluding a late-designated expert, even where the reason for the delay was the pro se party's incarceration during the discovery period). The Court's scheduling orders and the Civil Rules do not bend simply because an attorney miscalculates or makes a tactical mistake.

But that is not even what happened in this case; Defendants' tactics and strategic decisions have evinced bad faith throughout the litigation and continue to this day. In April 2016, Plaintiffs' counsel contacted counsel for Defendants to discuss the progress of the case following the Fifth Circuit's remand. The parties ultimately agreed to "jointly request the opportunity to submit *narrow additional briefing on th[e] one issue identified by the Fifth Circuit*—whether material disputes of fact exist so as to preclude summary judgment with respect to Plaintiffs' § 1983 due process claim against Defendants [other than Carter]." (*See* Dkt. No. 127 at 2 (emphasis added)). As part of this process, Plaintiffs' counsel agreed to voluntarily dismiss three individual defendants and, at Defendants' insistence, granted Defendants 49 days to brief the issue (and another 11 for reply) while accepting only 16 days for Plaintiffs' response. (*See* Dkt. No. 130 at 1). During these negotiations, counsel for Defendants never mentioned that they intended to file a motion regarding Defendant Carter, nor did they disclose the Dildy Declaration

or its substance. Indeed, Defendants' counsel allowed Plaintiffs' counsel to negotiate with an understanding that the *only* briefing issues remaining before trial were whether any of the other Defendants would join Defendant Carter at trial.

Defendants' negotiations were deceptive and in clear bad faith. Rather than making timely disclosures and negotiating forthrightly, one week after securing the voluntary dismissal of certain Defendants and obtaining a lengthy summary judgment briefing schedule, Defendants filed their surprise motion for reconsideration. (Dkt. No. 135 (filed May 4, 2016)). The 25-page memorandum and multiple supporting declarations make clear that counsel for Defendants were in fact preparing this motion based on the Dildy Report and Declaration for weeks—and yet deliberately misled Plaintiffs' counsel.

In sum, in moving for summary judgment, Defendants made a strategic decision to focus on probable cause and to incredibly argue that Darrin Hill was guilty of the crime. They framed this case as a false arrest case, and this Court disagreed. But instead of moving for reconsideration at that point, or asking for the Court to reopen discovery on the issue they now claim is so critical, Defendants filed a procedurally improper appeal to the Fifth Circuit, where they were again unsuccessful. Far from showing diligence or good cause, Defendants' actions have shown bad faith. Litigants do not get to rewind a case and retry a different approach simply because they failed to succeed on a motion or an appeal. This *Geiserman* factor weighs strongly in favor of excluding the Dildy evidence.

### ii. *The Dildy evidence is of limited importance*

The process by which Darrin Hill was adjudicated not guilty by reason of insanity is surely relevant to Plaintiffs' claims. But despite Defendants' attempts to portray their untimely-disclosed evidence as uncontested and definitive on this issue, there are serious questions as to

the Declaration's reliability, and the Judge Trial Report is easily capable of an interpretation that

is *favorable* to Plaintiffs' position.

Moreover, as Plaintiffs explained at length in their briefing before the Fifth Circuit on

this point, Plaintiffs need not prove that Mr. Hill was convicted at a formal trial—only that trial-

like procedures were followed. The Fifth Circuit heard Defendants' arguments on this point and

agreed with Plaintiffs. The Fifth Circuit determined that, even considering only the *uncontested*

facts—that Darrin Hill has consistently maintained his innocence but spent many years

incarcerated for a rape and robbery he did not commit—the District Court correctly denied

Defendants' motion for summary judgment on this point. It wrote:

> The defendants place a great deal of stress on the lack of evidence in the record regarding the details of the judicial proceeding that resulted in Hill being found not guilty by reason of insanity. They argue that the record does not definitively establish whether Hill went to trial. The district court found, however, that Hill was tried. **In any event, it is uncontested that Hill has consistently maintained his innocence and that he was found not guilty by reason of insanity on February 11, 1999, resulting in him spending the next thirteen years in state custody.**

*Hill*, 2016 WL 1055736, at *2 n.5 (emphasis added). Simply put, even considering the Dildy

evidence, Plaintiffs have at the very least created a genuine dispute of material fact as to whether

Defendants' misconduct created the basis for the judge's finding that caused Darrin Hill's

wrongful incarceration.

Additionally, the District Attorney's Judge Trial Report and the Declaration drafted by

Defendants' counsel are far from dispositive of the question of the process by which Darrin Hill

was adjudicated not guilty by reason of insanity. There remains an evidentiary basis for the

interpretation of this process stipulated to at summary judgment—that the judge, who presided

over Darrin Hill's case for years, heard live testimony at the suppression hearing, and viewed the

investigatory materials in this case, made a determination that Mr. Hill committed the charged

offenses. And the report apparently kept in Mr. Dildy's personal files actually supports this version of events; it appears to be a type of standard form used to indicate that a "judge trial" occurred. Although Mr. Dildy indicated in his notes that he believed that the "558.1" procedure was used, this is not an official or neutral report of what happened on that date. Moreover, even under the 558.1 procedure, Mr. Hill would not have been required to admit his factual guilt, and this procedure does not eliminate the legal requirement that the judge make a finding that Mr. Hill committed the crime. Thus, the untimely evidence is not nearly as important as Defendants portray it to be; at most it would put a material fact in dispute, which would still not be grounds for granting summary judgment to Defendants.

Additionally, the Fifth Circuit has explained that evidence is less likely to be considered "important" when its reliability has not been established. *See Paz*, 555 F.3d at 391 (affirming a district court's decision to exclude late-proffered evidence from consideration where the provenance or reliability of the evidence had not been clearly established by its proponent). The evidence put forth of Mr. Dildy's nearly decades-old recollection is not deposition or trial testimony that has been tested in any way—it is a Declaration, apparently prepared by counsel for Defendants, by a far-from-neutral witness. And the Declaration itself is in tension with Mr. Dildy's *trial* report, which at least suggests that Mr. Hill was tried for the rape and robbery. The late timing of this disclosure has deprived Plaintiffs of the opportunity to explore its many apparent weaknesses and inconsistencies. And with regard to Mr. Dildy's Judge Trial Report, Plaintiffs have not been able to discern whether other files were kept, or to explore why this single page of notes was kept for over twenty years in Mr. Dildy's personal files—and not in files maintained by the District Attorney's Office, as one would expect.

The Fifth Circuit has "emphasized that importance 'cannot singularly override the enforcement of local rules and scheduling orders.'" *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 2014 WL 1154334, at *5 (quoting *Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007)). And the "importance" prong is only a particularly weighty concern where the evidence would be "*necessary* to [the party's] case." *Betzel*, 480 F.2d at 707 (emphasis added). In *Betzel*, a party identified additional witnesses after a summary judgment motion was filed but before it was decided—and only three months after the Court-imposed deadline for designation so such witnesses had passed. *Id.* at 706. But setting aside that the evidence in this case was disclosed much later than the witnesses in *Betzel*, unlike in *Betzel* this is not a case where Defendants' "whole case depends on the excluded witnesses" or evidence. *Id.* at 707. Mr. Dildy's files and recollections are not "essential" to Defendants' case at the summary judgment stage or at trial, as Defendants may prove its case in a number of other ways—most fundamentally by convincing a jury that the detectives did not withhold or bury key evidence that would have exculpated Mr. Hill. This *Geiserman* factor should not weigh against exclusion.

### iii.    *Plaintiffs' substantial prejudice will be significantly increased unless Defendants are sanctioned*

Plaintiffs have not come across another case where a party has attempted to relitigate summary judgment based on evidence disclosed so long after the close of discovery, *and* after an unsuccessful interlocutory appeal. Apparently litigants do not ordinarily display this level of disrespect for the rules of procedure and the Court's authority to schedule and manage cases on its docket. Permitting Defendants' dilatory behavior and noncompliance with this Court's deadlines would prejudice Plaintiffs both in terms of their reliance on Defendants' initial concession at summary judgment, and by causing them significant additional litigation costs; "[t]he Fifth Circuit law on the prejudice prong consistently holds that such concerns are

substantial." *St. John v. Regis Corp.*, 2007 WL 1238413, at *3 (citing *Betzel*, 480 F.2d at 708, and *Geiserman*, 893 F.2d at 791–92).

Because respect for courts' scheduling orders is fundamental, the threshold for showing prejudice stemming from the opposing party's failure to comply with a scheduling order is relatively low. One court found that a party would be prejudiced in the form of "significant costs, in terms of both time and expense" if they were forced by a late disclosure to "prepare for and conduct a *deposition* at [a] late date." *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 2014 WL 1154334, at *5 (emphasis added). Prejudice may also take the form of "further delay," *Paz*, 555 F.3d at 391, or "the costs of preparing for yet another dispositive motion" when new evidence is put forth after a dispositive motion has already been filed, *St. John v. Regis Corp.*, 2007 WL 1238413, at *3.

Here, Plaintiffs have litigated this case for over a year and a half—before this Court and before the Fifth Circuit—in reliance on Defendants' failure to contest that "the judge found Mr. Hill not guilty by reason of insanity." (Dkt. No. 105-2 at 8 ¶ 77). Plaintiffs have made innumerable tactical decisions based on how Defendants chose to litigate summary judgment, and have expended considerable resources on this litigation since that stage. Permitting consideration of the Dildy evidence would multiply the expense and time necessary to bring this case to trial by forcing, at the very least, additional depositions and additional briefing—essentially, it would force Plaintiffs to relitigate the case.

The extreme length of the delay here, as well as the additional appellate litigation that Defendants necessitated during the period of delay, make the prejudice in this case significantly greater than in ordinary cases of noncompliance with a court's scheduling order. *See Geiserman*, 893 F.2d at 791 (explaining that of a *couple weeks' delay* in disclosing experts, if tolerated by the

court, would have disrupted the court's discovery schedule and the opponent's preparation). And that additional delay takes on special importance given the underlying facts of this case—that an innocent man spent over twenty years incarcerated for a crime he did not commit, and that he now seeks his day in court to hold accountable those responsible for his incarceration.

### iv.    *A continuance would not cure prejudice and deter future dilatory behavior*

Courts consider both whether a continuance would cure the prejudice to the compliant party and whether it would deter future dilatory behavior by the noncompliant litigant—in this case and generally. Plaintiffs here wish to proceed to trial as quickly and efficiently as possible; they do not desire a continuance, nor would it cure the prejudice that would be caused by permitting consideration of the Dildy evidence now or at trial. Where the compliant party does not request a continuance, courts have been loath to order one in this context. *See Geiserman*, 893 F.2d at 792 ("[C]ounsel never formally requested a continuance from the court. In fact . . . Plaintiff is anxious for the trial of this case to proceed and does not want any delay of his day in court." (internal quotation marks omitted)).

And a continuance in this case would not undo any of the prejudice caused by Defendants' dilatory behavior. Indeed, because the only purpose of a continuance that Plaintiffs can imagine would be to allow Plaintiffs to depose Mr. Dildy and conduct whatever additional discovery is necessitated by this late disclosure, the continuance itself would cause prejudice in the form of delay and the extra costs associated with the deposition and further litigation. *See Paz*, 555 F.3d at 391 (delay is prejudice); *Betzel*, 480 F.2d at 708 (increased litigation expenses due to re-preparing a motion for summary judgment would be prejudice); *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 2014 WL 1154334, at *5 (deposition costs are prejudice).

Thus, the remedy of a continuance would "entail[] additional expense to the plaintiff[s] and further delay[ their] day in court." *1488, Inc.*, 939 F.2d at 1289.

Finally, the need to deter future dilatory behavior is particularly acute here because of the nature and length of the delay. "Adherence to . . . scheduling orders [is] critical in maintaining the integrity of judicial proceedings." *1488, Inc*, 939 F.2d at 1289. Here, as is often the case, "a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman*, 893 F.2d 792. Courts simply cannot countenance the litigation tactics employed by Defendants in this case; this Court should sanction Defendants by excluding the Dildy evidence from consideration at summary judgment, and at trial. Indeed, exclusion of this evidence is the *only* sanction that could prevent further prejudice to Plaintiffs and deter future misconduct by litigants.

### B. Defendants' motion for reconsideration is actually a second summary judgment motion filed in violation of this Court's scheduling orders and should be stricken.

As a primary matter, the only basis for Defendants' so-called motion for reconsideration of this Court's summary judgment order is the late-disclosed Dildy evidence. If this evidence is excluded, as Plaintiffs believe it must be, the motion for reconsideration should be stricken in its entirety, as it is based exclusively on the late-disclosed evidence. (*See* Dkt. No. 135 (arguing for reconsideration solely "on the basis of newly discovered evidence")).

But there is a second basis to strike the motion for reconsideration: It is not a motion for reconsideration at all, but instead is a *second* motion for summary judgment that has been filed nearly 18 months after this Court's deadline for dispositive pre-trial motions, which was **November 21, 2014**. This constitutes another violation of this Court's scheduling order, and for all the reasons discussed above, this Court should strike the so-called motion for reconsideration as a sanction under Federal Rule Civil Procedure 16(f).

However, even if the Court declines to strike this motion as a sanction, Defendants' motion is so dramatically untimely that it should not even be considered:

> Because the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, a motion for reconsideration should be treated as a motion to alter or amend a judgment under Rule 59(e) if filed within twenty-eight days of the challenged ruling or judgment and under Rule 60 if filed beyond that time.

*Anderson v. Shimon*, No. Civ. A. 10-1845, 2011 WL 2457865, at *1 (E.D. La. June 16, 2011); *see also Lacoste v. Pilgrim Int'l*, No. Civ. A. 07-2904, 2009 WL 1565940, at *8 n.4 (E.D. La. June 3, 2009) (collecting cases that stand for the same proposition). Needless to say, 28 days have long passed since this Court's January 2015 summary judgment decision. Defendants chose not to move for reconsideration of that decision. *See Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999) (noting that a timely and procedurally proper Rule 59 motion to reconsider summary judgment was filed before the appellant took an interlocutory appeal).

Thus, if considered anything other than a second summary judgment motion, Defendants' motion would have to be deemed a motion for relief from a final judgment or order under Rule 60(b)'s more stringent standards. Under this Rule, the court may exercise its discretion to relieve a party from an order if there is "newly discovered evidence that, with **reasonable diligence**, could not have been discovered in time to move for [relief] under Rule 59(e)." Fed. R. Civ. P. 60(b)(2) (emphasis added). But, likely because Defendants realize they cannot make the required showing of diligence—their motion was filed nearly 18 months after Plaintiffs' Opposition to summary judgment that Defendants claims so surprised them, (*see* Dkt. No. 106), and nearly 12 months after Defendants first spoke to Mr. Dildy, (*see* Ex. A at 2–6)—Defendants do not attempt to style their motion as a Rule 60 motion.

Unable to conform to Rule 59 or Rule 60, Defendants ask this Court to exercise its discretion under its inherent powers to excuse their dilatory behavior. But neither the Federal

Rules of Civil Procedure nor the practice of courts in this Circuit permits a party to file for reconsideration in this belated manner. Defendants made a strategic choice to forgo reconsideration in front of this Court and instead took advantage of the unique interlocutory appeal mechanism. At that stage, they failed to ask the Fifth Circuit to supplement the record, but still raised many of these same arguments based on Plaintiffs' alleged lack of evidence regarding the trial. The Fifth Circuit rejected their arguments. *See Hill*, 2016 WL 1055736, at *2 n.5 ("In any event, it is uncontested that Hill has consistently maintained his innocence and that he was found not guilty by reason of insanity on February 11, 1999, resulting in him spending the next thirteen years in state custody."). Having availed themselves of one costly and time-consuming avenue of challenging the order through an appeal, Defendants are not permitted to simply try another tack over a year later when the appeal fails. Defendants have not directed the court to a single case where such an approach was allowed, and Plaintiffs are not aware of any such case.[5]

Plaintiff Darrin Hill has been waiting nearly 24 years for a fair trial, and yet Defendants again seek delay—and no doubt will *again* take an interlocutory appeal if this Court entertains their so-called motion for reconsideration. This Court is not bound by how Defendants titled their motion. It should recognize Defendants' motion for what it is: a radically untimely second

---

[5] If the motion were somehow considered a motion for reconsideration, there would be no grounds on which to grant such a motion. *See Town of Gramercy v. Blue Water Shipping Servs.*, No. Civ. A. 07-2655, 2009 WL 580445, at *1 (E.D. La. Mar. 4, 2009) ("The Court is disinclined to grant a motion to alter a judgment based on **evidence that could have been presented in the original motion for summary judgment**." (emphasis added)); *Peterson v. Cigna Grp. Ins, Life Ins. of N. Am.*, No. Civ. A. 99-2112, 2002 WL 1268404, at *2 (E.D. La. June 5, 2002) ("[A] Rule 59(e) motion should not be used to relitigate prior matters that **should have been urged earlier** or that simply have been resolved to the movant's dissatisfaction." (emphasis added)); *LaFargue v. Jefferson Par., Louisiana*, No. Civ. A. 98-3185, 2000 WL 174899, at *1 (E.D. La. Feb. 11, 2000) ("Reconsideration of a judgment is an extraordinary remedy which should be used sparingly and should not be used to relitigate old matters, raise new arguments, or present evidence that could have been raised prior to entry of the judgment.").

motion for summary judgment. Plaintiffs respectfully ask that this Court should sanction Defendants by striking the motion.

## IV.     Conclusion

Plaintiffs ask that this Court uphold some of the most fundamental rules of litigation and rebuff Defendants' efforts to relitigate without justification issues that they chose not to litigate at the proper time. As exclusion is the only remedy that would come close to eliminating the prejudice to Plaintiffs caused by this bad faith behavior, Plaintiffs ask that the Court sanction Defendants by excluding the Dildy evidence from consideration now, and by excluding it at trial. Of course, this sanction should extend to precluding Defendants from pressing this issue yet *again* during their summary judgment briefing regarding the other individual defendants, or from relying on the Dildy evidence in those motions.

Alternatively, if this Court declines to exclude the Dildy evidence from trial, or if Defendants are permitted to call Mr. Dildy as a witness at trial, Plaintiffs ask that this Court impose the lesser sanctions of excluding the Dildy evidence from consideration before trial and striking Defendants' "motion for reconsideration" before requiring Plaintiffs to respond. This sanction would somewhat lessen the prejudice caused by Defendants' dilatory behavior while not significantly affecting Defendants' case. Finally, if this Court does not believe sanctions are appropriate, Plaintiffs ask that the Court permit Plaintiffs to take the deposition of Mr. Dildy before they are required to respond to Defendants' motion for reconsideration.[6]

---

[6] Though this would further prejudice Plaintiffs by causing them to spend additional time and resources litigating an issue already properly decided—and thus is contrary to the Fifth Circuit's guidance in *Geiserman*—Defendants' behavior has unfortunately necessitated such a request.

Dated: May 24, 2016                                    Respectfully submitted,

                                                       /s/ Anna Benvenutti Hoffmann
                                                       Barry C. Scheck, Esq.
                                                       Nick Brustin, Esq.
                                                       Anna Benvenutti Hoffmann, Esq.
                                                       Emma Freudenberger, Esq.
                                                       Farhang Heydari, Esq.
                                                       Neufeld Scheck & Brustin, LLP
                                                       99 Hudson St., 8th Floor
                                                       New York, NY 10013
                                                       Tel. (212) 965-9081

                                                       Stephen J. Haedicke
                                                       Attorney ID # 30537
                                                       The Law Offices of Stephen Haedicke, LLC
                                                       639 Loyola Ave #1820
                                                       New Orleans, LA 70113-7104
                                                       (504) 525-1328, ext 3

                                                       *Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Memorandum in Support of Plaintiffs'*

*Motion for Sanctions and to Strike Defendant Cathey Carter's Motion for Reconsideration* has

been sent to all counsel of record via the Court's ECF filing system on May 24, 2016.


                                                       Anna Benvenutti Hoffmann
                                                       *Attorney for Plaintiffs*